## North Hills School District v. Richards

*Thomas R. Neely*, for School District.
*Richard W. Kelly*, for appellants.

WEKSELMAN, *J.*, June 27, 1975—The above-captioned matter is before the court on appeal from the action of the North Hills School District which, after hearing, expelled appellant from school. The facts, with one exception which will be referred to hereafter, have been stipulated and are contained in the appeal petition filed by appellant. Those facts, in brief, are as follows:

Appellant is a ninth-grade student at the Intermediate High School of the appellee School District. On April 25, 1975, a female student in the school was directed to the school nurse by her teacher because the teacher observed uncharacteristic actions by that student. The school nurse caused the student to be sent to Bellevue Suburban Hospital, which institution subsequently informed the school that the student had ingested a quantity of motion sickness pills known as Marezine. The student, who had ingested the pills, later informed school authorities that she had requested the pills from two other students on the same day that she had ingested them. Those two students then informed school officials that they had been approached by the female student and asked to secure her some pills to make her "feel better." They, in turn, inquired of appellant where such pills could be secured. Appellant informed them that he did not know where to secure such pills, but that, if he found any, he would let them know. About an hour

later, the two boys who had originally received the request approached a group, including appellant, behind the school and again inquired as to the availability of pills. Appellant at that time gave them 24 Marezine pills for which they gave appellant $2. They then gave 12 of the pills to the female student and retained the remaining 12. Some five days later, as the inquiry continued, appellant was asked in the presence of the school security officer, the school principal, appellant's parents and their attorney, whether he had been involved in the above-described incident. After receiving assurances from the security officer that if he voluntarily provided information and cooperated with school officials, he would not be dealt with severely, appellant admitted his involvement. He further stated that he inquired of another student behind the school and was directed to two other boys he did not know and secured the 24 Marezine pills from them which he turned over to the original two boys who gave him the $2 which he turned over to the two unknown boys. Subsequently, appellant's parents received notice from counsel for the school district that a hearing would be conducted by the school board on the evening of May 27, 1975, which notice recited that the hearing could result in a suspension or expulsion from school. At the hearing, it was stipulated that the substance Marezine is a nonprescription medication readily available for sale over the counter at most drug stores and similar establishments which sell medical remedies. No testimony was presented at the hearing in support of the school district's charge that the use or possession of Marezine violated the rules and regulations of the school district, or that Marezine is a drug requiring a prescription, or that the possession or

use of Marezine is in violation of the law. At the conclusion of the hearing, the school board deliberated in private and expelled all of the involved male students, including appellant, from school.

The only statement contained in appellant's appeal petition which is in dispute is appellant's assertion that Marezine is not a drug falling within the definition of "other drugs" or "controlled substances" under The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, 35 P.S. §§780.101, et seq.

It is in this factual context that appellant seeks to have the order of expulsion set aside.

There can be no doubt that a student situated in the position of appellant has a property interest in receiving an education. The United States Supreme Court has recently addressed itself to a situation involving a penalty of suspension for less than ten days. In Goss v. Lopez, 419 U.S. 565, 95 S. Ct. 729 (1975), the United States Supreme Court said:

"Among other things, the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that clause."

There, as above indicated, the court was dealing with the relatively mild penalty of a suspension of less than ten days. The court further stated:

"We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures.

Nor do we put aside the possibility that in unusual situations, although involving only a short suspension, something more than the rudimentary procedures will be required."

In the light of that, appellant argues that the procedure followed violated his constitutional rights. The court finds the first of these asserted violations persuasive and dispositive of the issue at bar. As stated in appellant's brief, that assertion is as follows:

"A school regulation must not be so broad, unreasonable, or subject to conflicting interpretations, so as to deny notice to a student of the specific conduct intended to be prohibited."

In the instant case, the hearing and subsequent expulsion were predicated upon the published drug policy of the school which was distributed to each of the students as a part of a "Parent-Student Handbook." That drug policy reads as follows:

"The policy of the Board of Education of the North Hills School District prohibits the possession or use of drugs in school facilities or on school properties. Medication prescribed by a physician for a student involving the use of drugs during the school day should be reported by parents to the school nurse. Any student required to take medication during the school day involving drugs prescribed by a physician must do so under the supervision of a school nurse.

"The possession or use of drugs without prescription by a physician is a violation of law and damaging to the learning process."

The drug policy goes on to outline the steps which will be taken in the event of "any suspected case of

drug abuse." Those steps include the various procedures which the school will follow leading up to a possible hearing, if such is deemed necessary. The drug policy section of the handbook concludes as follows:

"Parents or guardians of any student suspended for violation of this policy shall receive notification in writing by registered mail of the specific charges, the date established for a Board hearing on the charges and of their rights and responsibilities related to the hearing process." (Emphasis supplied.)

A fair reading of the drug policy, under which appellant was expelled from school, discloses a number of things. First of all, it discloses in the second paragraph thereof a clear misstatement of the law. This court is aware of no law which makes "the possession or use of drugs without prescription by a physician" a violation of law, unless, of course, the drug referred to is a narcotic, the use or possession of which is proscribed by law. Such is clearly not the case with the medication Marezine, whether that medication be labeled a "drug" or not. That, of course, leads to another observation which may fairly be made of the school's drug policy. That observation is that nowhere is the word "drug" defined. One might consider the drug policy to be designed to prevent the use of narcotic drugs, as that term is generally understood, within the school, or the drug policy might be read to prohibit the use on the school premises of any kind of medication, no matter how innocuous. In fact, a very broad reading of the drug policy would require the branding as a violation of that policy of the use by a student of aspirin or cough drops or throat lozenges or similar items, none of which would ordinarily be prescribed by a physician and, therefore, come

within the portion of the drug policy involving the supervision of a school nurse. A student with a sore throat might very well be sucking on Sucrets or any of a myriad of other such preparations commonly used by untold numbers of our society. Under a literal interpretation of the drug policy, as advocated by the appellee's brief, such a student would be subject to discipline under the drug policy of the school district.

Moreover, a reading of the drug policy would lead a student to the conclusion that only a suspension could result from violation of the policy, for that is the only word used in connection with penalties in the drug policy section of the handbook. Whenever a person is accused of conduct for which a penalty may be imposed, he must not only have a reasonable opportunity to be aware of the conduct intended to be prohibited, but he must also have reasonably intelligible standards setting forth the penalty for violation. This court finds the drug policy of the appellee school district to be deficient in both regards.

In short, the court finds that the drug policy as contained in the handbook is not sufficiently explicit to inform appellant that possession or use of the drug Marezine was in violation of the policy or that expulsion could result even if that use or possession violated the policy. In such circumstances, the court is constrained to hold that appellant was not afforded due process in the imposition of the very serious penalty of expulsion and the order and expulsion must be vacated.

## ORDER

And now, June 27, 1975, the appeal is sustained and the order of expulsion is vacated.